Filed 8/21/14  P. v. Bean CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Lassen)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C072954 |
| v. | (Super. Ct. No. CH027894) |
| ERICK BEAN, | |
| Defendant and Appellant. | |

A jury convicted defendant Erick Bean of battery by a prisoner on a non-confined person (Pen. Code, § 4501.5)[1] and sustained three prior strike convictions.  (§§ 667, subd. (b)-(i), 1170.12.)  The trial court sentenced defendant to serve six years in state prison.

On appeal, defendant contends the trial court's comments to the jury regarding the testimony of a prosecution witness constituted prejudicial error.  We conclude the trial

---

[1]    Undesignated statutory references are to the Penal Code.

1

court's comments were improper because they vouched for the credibility of a witness based on facts not in the record. However, based on the other testimony and evidence, we conclude the error was harmless. Accordingly, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

*The Crime*

On the morning of January 5, 2010, Correctional Officer Brett Schaake was retrieving meal trays from the prisoners' cells at High Desert State Prison. He would go to the cell door, slide the security port open, and the prisoners would pass the trays through the port. When he arrived at defendant's cell, defendant was standing next to the door and inmate Rivera was sitting on the top bunk, leaning against the back wall.

Officer Schaake opened the security port and took the trays from defendant. Next, defendant swung his arm back and forward towards the cell door and Officer Schaake felt a liquid hit him. After telling the inmates to get down, Officer Schaake determined the liquid hit him on the waist, chest, arm, and upper leg.

Correctional Officer Jason Robinette responded to defendant's cell after hearing Officer Schaake's order to get down. Upon arrival, he saw a wet spot on Officer Schaake's jumpsuit, and a milk carton, ketchup packet, and paper cup on the floor outside defendant's cell.

Correctional Officer Adelaio Rodriguez observed the liquid on Officer Schaake's jumpsuit and the wet spot, milk carton, and other food items on the floor by defendant's cell. Rodriguez questioned defendant about the incident. Defendant said he was agitated and upset for not receiving psychiatric care.

*Procedural Background*

Rodriguez testified on direct examination that defendant told him he had been "agitated and upset for not receiving psychiatric care." He wrote two reports in the case, one public and one confidential. He wrote a confidential report because he considered

2

defendant's statement regarding the lack of psychiatric care to be medical information and therefore confidential. In the public report, he wrote defendant was agitated and upset, while in the confidential report Rodriguez wrote defendant was upset for not receiving any psychiatric care.

During cross-examination, Rodriguez admitted to having a conversation with defense counsel about two weeks prior, when the officer was on his way to training. Counsel had asked Rodriguez if everything was contained in his report, and he had told counsel it was. He also admitted he had left out matters in the report given to defense counsel that were included in the confidential report.

Defense counsel continued cross-examination of Rodriguez as follows:

"Q. [Defense Counsel]: So you knew at the time, didn't you, that you had already done another report and it had some other statements in it, but you didn't disclose those to me, did you?

A. [Officer Rodriguez]: Correct, it's on the bottom portion of my report that I had made another report.

Q. But it doesn't say in that other report that there were other things that [defendant] said, did it?

A. No.

Q. So when I asked you again does this report that you filled out, . . . does that contain all the stuff that [defendant] said? Your response was yes; am I correct?

A. Correct.

Q. Then I asked you again is that everything that [defendant] said? And your response was yes; is that correct?

A. Correct.

Q. But that wasn't true, was it?

A. No, with the exception of the confidential.

Q. And then a week later or so you discovered that oh yeah, I did do a report or confidential report and there's other stuff in it; is that true?

A. It was actually the next day I reviewed my confidential.

Q. Did you call me or tell me and let me know that oh, I now discovered that there's some additional information that I didn't tell you about?

A. No.

Q. Why not?

A. I didn't think I could tell the defense that there was a confidential, disclose any confidential information.

Q. That's a decision you made on your own, right?

A. Yes.

Q. But even after you told me there was no other information, you decided . . . to withhold that from me; is that correct?

A. Yes."

On redirect, Rodriguez testified he had been trained not to give confidential information to defense counsel, either orally or in writing. The prosecutor asked Rodriguez, "Are you aware that defense attorneys have to go through court to get confidential information?" Defense counsel objected because the question asked for a legal conclusion from Rodriguez. The prosecutor asked for an instruction in the alternative and the parties then addressed the matter outside the jury's presence.

The prosecutor admitted his question called for a legal conclusion from the witness, so he asked the trial court "to give the statement of law to the jury that confidential information does have to go through the Court. We've done it many times and there has to be a formal motion made, the attorney general's office usually appears for the Department of Corrections, the Court usually reviews it in chambers before it's given." The prosecutor normally would not "want to get into all this morass, . . . but

defense [counsel] opened this door and left it hanging that Officer Rodriguez did something wrong by not advising defense counsel and his investigator of this confidential information and that's what's left."

The trial court asked defense counsel what was wrong with advising the jury counsel needed a hearing to get confidential information. Counsel replied, "Tell me what statutory authority is for that, Your Honor." The court replied it did not know, but that did not mean such authority did not exist. Defense counsel replied he was not aware of any statute that forbids disclosure of confidential records from the Department of Corrections and Rehabilitation (CDCR) without a court order. Instead, according to defense counsel, "It's a policy of the [CDCR]."

The trial court agreed it may not be statutory, but asked defense counsel what was wrong with "advising the jury that it is the procedure, it is the policy and procedures of High Desert State Prison that an officer cannot convey to you, but that you should file a motion?" Defense counsel said that would be wrong because what mattered was not whether it was prison policy, but "whether or not it's statutorily required." Continuing, defense counsel said Rodriguez "unilaterally made a decision that because the defendant used the word psychiatric care, that shouldn't go in his statement. He made the decision, not the [CDCR], he left it out of the report." When the trial court suggested having the prosecutor ask Rodriguez if he believed he was following the policy when he omitted the confidential report, defense counsel had problems with that because the information, which was eventually disclosed to the defense by the prosecution, should have been given to him from the beginning. Defense counsel argued it did not matter whether Rodriguez believed he was following policy, "it's whether he had a legal right."

The prosecutor argued that authorities other than statutes, such as case law, also limited the duty to disclose information. According to the prosecutor, Rodriguez would have been fired if he disclosed the confidential information to defense counsel on his

5

own.  The prosecutor did not want to have the trial court tell the jury "what defense counsel should do if they want to get the confidential information."  However, it had been "left hanging" that "Officer Rodriguez did something wrong by not disclosing the confidential information to the defense counsel when defense counsel asked" even though the officer would have done something wrong had he disclosed the information.

The trial court agreed with the prosecutor and, over defense counsel's due process objection, made the following comments to the jury:  "You've heard [Rodriguez] several times acknowledge to [defense counsel] that when they met a few weeks ago or any time prior to that, that [Rodriguez] ever advised him there was a confidential, a separate report which had a few extra words in it regarding the upset, agitated situation and in fact, I want to advise you that [Rodriguez] believed that at that time, he was not free to disclose the confidential report, the few extra words that were in that report, so I didn't want you to have the feeling that he was hiding anything or being improper in this matter, but that he did not feel at that time he could release the information."

DISCUSSION

Defendant contends the trial court's comments to the jury on Rodriguez's failure to inform defense counsel of the confidential report usurped the jury's function and violated his due process right to a fair trial.

"Article VI, section 10 of the California Constitution provides, in pertinent part: 'The court may make any comment on the evidence and the testimony and credibility of any witness as in its opinion is necessary for the proper determination of the cause.'  We have interpreted this provision to require that such comment ' "be accurate, temperate, nonargumentative, and scrupulously fair.  The trial court may not, in the guise of privileged comment, withdraw material evidence from the jury's consideration, distort the record, expressly or impliedly direct a verdict, or otherwise usurp the jury's ultimate factfinding power." '  [Citations.]  Thus, a trial court has 'broad latitude in fair

6

commentary, so long as it does not effectively control the verdict.' [Citation.] 'We determine the propriety of judicial comment on a case-by-case basis.' [Citation.]" (*People v. Monterroso* (2004) 34 Cal.4th 743, 780 (*Monterroso*).)

Defendant asserts "there was no evidence in the record to corroborate [Rodriguez]'s testimony that he was trained that any reference to psychiatric care may not be disclosed to the defense, nor was there any specific evidence concerning the policy of the prison to not disclose confidential matters." Defendant concludes the trial court vouched for Rodriguez's credibility when it told the jury he was complying with prison policy when he failed to inform defense counsel of the confidential report. Claiming this was a close case and the jury would likely take defendant's statement to Rodriguez as an admission he threw the liquid at Officer Schaake, defendant claims the alleged error was prejudicial.

The Attorney General notes the trial court's broad authority to exclude evidence pursuant to Evidence Code section 352. (Evid. Code, § 352; see also *People v. Ayala* (2000) 23 Cal.4th 225, 301.) The Attorney General contends the trial court's decision was based on its stated desire to avoid confusion that would result from addressing in detail the requirements for disclosing CDCR documents. The Attorney General asserts this was a correct conclusion, and the trial court's comments "effectively mooted the attempted impeachment of [Rodriguez] by defense counsel." Characterizing the trial court's actions as the proper exclusion of impeachment pertaining to a collateral matter that "touched on confusing and time consuming issues," the Attorney General argues the trial court committed no error.

While the Attorney General argues the trial court's comments on the evidence had the same effect as excluding the evidence, the trial court did not exclude the evidence but instead commented to the jury that Rodriguez's explanation for not disclosing the confidential report was credible. By informing the jury Rodriguez was credible on one

7

point, the comments allowed the jury to infer he was generally credible. Since the court's comments had more consequence than the simple exclusion of evidence, we cannot evaluate the comment as an exercise of the court's discretion under Evidence Code section 352.

A trial court's commentary on a witness's credibility cannot rely on evidence outside the record. Vouching for a witness, personally attesting to a witness's credibility by reference to facts outside the record (*People v. Williams* (1997) 16 Cal. 4th 153, 257), is a type of improper judicial commentary on the evidence. (See *People v. Coddington* (2000) 23 Cal.4th 529, 615-616, disapproved on another ground in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13. [analyzing allegations of judicial vouching under the heading "*Judicial Comment*"].) Any form of judicial commentary is improper when it relies on facts not in evidence. A trial court's comments on the evidence must be "accurate, temperate, nonargumentative, and scrupulously fair." (*Monterroso, supra*, 34 Cal.4th at p. 780.) A comment on the evidence that relies on some fact not in the record or subject to judicial notice is neither accurate nor fair.

Here, the trial court's comments to the jury regarding Rodriguez's testimony were improper judicial commentary because the comments vouched for the officer's credibility based on facts not in the record. Defense counsel did admit to the trial court that CDCR policy was to not disclose confidential information without court action. However, defense counsel took issue with Rodriguez's decision to determine on his own that defendant's statement regarding psychiatric care was confidential, and there is no evidence in the record regarding an officer's discretion to conclude an inmate's statement

8

is confidential. Thus, we conclude it was error for the trial court to comment to the jury on Rodriguez's credibility based on facts not in the record.[2]

Improper judicial commentary on the evidence is evaluated under the standard of review set forth in *People v. Watson* (1956) 46 Cal.2d 818. (*People v. Flores* (1971) 17 Cal.App.3d 579, 588 (*Flores*).) We must determine whether it is reasonably probable a result more favorable to the defendant would have been reached in the absence of the error. (*Watson*, at p. 837.) Based on the other testimony and evidence, we conclude the error was harmless.

The statement Rodriguez took from defendant, that he was agitated and upset at the time of the incident for not receiving psychiatric care, provided a motive for the attack. By admitting the motive for the attack, defendant's statement could be viewed as an admission of guilt by the jury. Officer Rodriquez also testified to authenticate photographs taken during the investigation of the area in front of defendant's cell and of Officer Schaake after the attack. Impeaching Rodriguez would not diminish the jury's consideration of those photographs.

Officer Schaake was the victim. While he did not see defendant throw the liquid, he saw defendant swinging his arm back and forward toward the cell door and then felt a liquid hit him. The jury had to find him credible in order to convict defendant. His testimony was supported by evidence that was not dependent on Rodriguez's credibility, namely the photographic evidence and Officer Robinette's testimony he saw a wet spot on Officer Schaake's jumpsuit and food debris in front of defendant's cell.

---

[2] While this error may be invited because defense counsel objected to evidence about prison policy being admitted, we do not need to reach this issue because we conclude the error is harmless.

9

Finally, the information in the two reports was virtually the same. The public report stated defendant was agitated and upset. The confidential report stated defendant was upset for not receiving any psychiatric care. Both reports conveyed the fact defendant was agitated and/or upset. Even if the trial court did not vouch for Rodriguez's testimony, the jury may well have believed his testimony that he did not give the second report to defense counsel because he believed it was confidential.

The error in this case stands in sharp contrast to the case on which defendant relies, *Flores*. *Flores* involved a trial with two witnesses, the defendant and the arresting officer. (*Flores, supra*, 17 Cal.App.3d at pp. 581-583.) The officer testified to seeing the defendant first throw away a balloon containing heroin after seeing the officer, and then give a sack containing whiskey and other groceries to a couple walking in the opposite direction. (*Id*. at pp. 581-582.) The defendant testified he did not drop a balloon of heroin and kept walking with the bag of whiskey and other items after hearing an order by the officer to stop. (*Id.* at pp. 582-583.) When the jury announced it was deadlocked seven to five, the trial court informed the jury if it believed the officer's testimony it had to convict, and the court found the defendant not credible and the officer credible so it would vote to convict. (*Id*. at p. 583.) Since the jury was deadlocked and the court's instruction all but directed a verdict of guilty, the error was not harmless under the *Watson* standard. (*Flores, supra,* at p. 588.) Unlike *Flores*, the trial court's comments here did not involve an issue that would lead a jury to find defendant guilty. Rodriguez's reasons for not disclosing a confidential report that was consistent with the public report was a collateral issue; it was not an issue that would decide defendant's guilt or innocence.

We conclude the error is harmless because it is not reasonably probable defendant would obtain a more favorable result in the absence of the trial court's comments to the jury.

DISPOSITION

The judgment is affirmed.

      HOCH     , J.

We concur:

    BLEASE    , Acting P. J.

     HULL    , J.